UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
STEPHANIE MARIE V.,

                      Plaintiff,        <u>DECISION AND ORDER</u>
                                    1:25-CV-01784-GRJ

        v.

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In December of 2020, Plaintiff Stephanie Marie V.[1] applied for

Disability Insurance Benefits and Supplemental Security Income Benefits

under the Social Security Act. The Commissioner of Social Security denied

the applications.  Plaintiff, represented by the New York County Lawyers

Association, by Jessica Breuer, Esq., of counsel, and Mark Levine, Esq.,

*pro bono*, seeks judicial review of the Commissioner's denial of benefits

pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to

the jurisdiction of a United States Magistrate Judge. (Docket No. 23).

This case was referred to the undersigned on April 21, 2026.

Presently pending is Plaintiff's Motion for Judgment on the Pleadings

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil
Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court
Administration and Case Management of the Judicial Conference of the United States.

pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 27). For the following reasons, Plaintiff's motion is due to be granted, and this case is remanded for further administrative proceedings.

## I. BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on December 29, 2020, alleging disability beginning January 3, 2016. (T at 292-97, 298-307).[2]  Plaintiff's applications were denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on December 1, 2022, before ALJ Lori Romeo. (T at 38-71). Plaintiff appeared with an attorney and testified. (T at 44-60). The ALJ also received testimony from Kathleen Doehla, a vocational expert. (T at 61-70).

### B.    ALJ's Decision

On March 28, 2023, the ALJ issued a decision denying the applications for benefits. (T at 7-29).  The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2019 (the date last insured) and had not engaged in substantial gainful activity since January 3, 2016 (the alleged onset date). (T at 13).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 26.

The ALJ concluded that Plaintiff's bilateral knee impairment; obesity; thyroid disease; hiatal hernia; plantar fasciitis; major depressive disorder; post-traumatic stress disorder (PTSD); panic disorder; anxiety disorder were severe impairments as defined under the Act. (T at 13).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 13).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR 404.1567 (a), with the following limitations: she cannot kneel, crouch, or crawl; should work indoors, must avoid extreme cold, and needs ready access to a restroom; can only stoop occasionally; can understand, remember, and carry out simple instructions; occasionally interact with supervisors, coworkers, and the public; and must be permitted to be off-task 9% of the day in addition to normal breaks. (T at 16).

The ALJ concluded that Plaintiff could not perform her past relevant work as an agent specialist payroll, customer service payroll, operations assistant for a real estate developer, or pastry chef. (T at 22).

However, considering Plaintiff's age (42 on the alleged onset date), education (at least high school), work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 22-23).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between January 3, 2016 (the alleged onset date) and March 28, 2023 (the date of the ALJ's decision). (T at 24).

On January 24, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

C.    *Procedural History*

Plaintiff commenced this action, *pro se*, by filing a Complaint on March 3, 2025. (Docket No. 1).

On August 26, 2025, Plaintiff, now represented by counsel, filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket No. 27,28).

The Commissioner on November 25, 2025, interposed a brief in opposition to the motion and requested judgment on the pleadings. (Docket No. 29).

On December 16, 2025, Plaintiff submitted a reply memorandum of law in further support of her motion. (Docket No. 32).

## II.   APPLICABLE LAW

### A.   Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which

conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B.    Five-Step Sequential Evaluation Process

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether the claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

### III.  DISCUSSION

Plaintiff's primary argument is that the ALJ's assessment of the medical opinion evidence was flawed, which undermines the RFC determination.

*A. Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the

medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

The record contains numerous medical opinions regarding Plaintiff's physical and mental functioning.  The Court will summarize those opinions and then address the ALJ's analysis.

9

### 1. Physical Functioning

Dr. Silvia Aguiar performed a consultative examination in April of 2021. She diagnosed history of traumatic brain injury, bilateral knee pain (status post left knee meniscus repair), history of irritable bowel syndrome, history of hiatal hernia, and obesity. (T at 507). Dr. Aguiar opined that Plaintiff had no physical limitations.

On April 20, 2021, Dr. K. Gallagher, a non-examining State Agency review physician, believed Plaintiff did not have any severe physical impairments as of that date and found insufficient evidence to rate the severity of her physical impairments prior to the date last insured. (T at 77-78, 94).

On September 1, 2021, Dr. A. Periakaruppan, another State Agency review physician, reached the same conclusions. (T at 110-11, 132).

Dr. Elon Fernandez performed a consultative neurologic examination in August of 2021. He diagnosed traumatic brain injury, psychiatric disease, bilateral knee pain, irritable bowel syndrome, hiatal hernia, and hypothyroidism. (T at 574). Dr. Fernandez found that Plaintiff had no physical deficits or functional limitations. (T at 574).

The ALJ found that Plaintiff's bilateral knee impairment; obesity; thyroid disease; hiatal hernia; and plantar fasciitis were severe physical

impairments, as defined under the Social Security Act. (T at 13).  The ALJ concluded that Plaintiff retained the RFC to meet the physical demands of sedentary work, as defined in 20 CFR 404.1567(a) and 416.967(a), except that she cannot kneel, crouch, or crawl; needs to work indoors, must have ready access to a restroom, should avoid extreme cold; and can only occasionally stoop. (T at 16).

In reaching this conclusion, the ALJ found the State Agency opinions "generally unpersuasive" and deemed the consultative examiner opinions "partially persuasive." (T at 21).

The Court finds the ALJ's assessment of these opinions, and the resulting determination of Plaintiff's ability to meet the physical demands of basic work activity, supported by substantial evidence and consistent with applicable law.

First, the ALJ gave Plaintiff the benefit of the doubt, noting evidence of a foot impairment, chronic left knee pain complaints, obesity, and some mild positive clinical findings, and finding her more restricted in functioning than all four of the physicians. (T at 21). *See Baker o/b/o Baker v. Berryhill*, No. 1:15-CV-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018)("Where an ALJ makes an RFC assessment that is *more* restrictive

than the medical opinions of record, it is generally not a basis for remand.")(emphasis in original)(collecting cases).

Second, the ALJ's decision is supported by a reasonable reading of the treatment record.  During her examinations with Dr. Aguiar and Dr. Fernandez, Plaintiff demonstrated normal gait and stance, walked on heels and toes without difficulty, displayed normal musculoskeletal functioning, with full range of motion and full (5/5) strength in the upper and lower extremities. (T at 505-506, 573-74).

The ALJ likewise surveyed the treatment record, noting some complaints of pain and limitation, but generally mild findings. (T at 17-21, 437, 444, 447, 533, 553, 970, 1258).

The ALJ also referenced imaging studies, which generally showed mild to moderate findings. (T at 17-21, 437, 443). *See Trepanier v. Comm'r of SSA*, 752 Fed. Appx. 75, 79 (2d Cir. 2018)(the ALJ may reach a determination that "does not perfectly correspond with any of the opinions of medical sources," provided the overall assessment is supported by substantial evidence and consistent with applicable law); *see also Rosa v. Callahan*, 168 F.3d 72, 29 (2d Cir. 1999)(noting that "the ALJ's RFC finding need not track any one medical opinion").

Third, the ALJ gave appropriate consideration to Plaintiff's physical activities, which included independent living, cooking, cleaning, laundry, and shopping. (T at 17-18, 403, 505, 572).

A claimant's "normal range of activities" may be relied upon as evidence that the claimant "retains a greater functional capacity than alleged." *Smoker v. Saul*, No. 19-CV-1539-AT-JLC, 2020 WL 2212404, at *17 (S.D.N.Y. May 7, 2020)(citation omitted).

In particular, "[e]vidence that a plaintiff is capable of participating in various activities of daily living despite allegations of severe pain can support a determination that a plaintiff can perform sedentary work." *Niven v. Barnhart*, No. 03 CIV. 9359DLC, 2004 WL 1933614, at *6 (S.D.N.Y. Sept. 1, 2004)(citing *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980)); *see also Rutkowski v. Astrue*, 368 Fed. App'x 226, 230 (2d Cir. 2010) (affirming ALJ's determination in light of "substantial evidence … showing that [claimant] was relatively 'mobile and functional,' and that … allegations of disability contradicted the broader evidence").

Plaintiff argues that the ALJ gave insufficient consideration to the impact of her obesity on her workplace functioning.

Plaintiff, however, points to no evidence of additional work-related limitations specifically related to obesity that the ALJ failed to consider or

13

incorporate. *See Browne v. Comm'r of Soc. Sec.*, 131 F. Supp. 3d 89, 101 (S.D.N.Y. 2015); *Mota v. Comm'r of Soc. Sec.*, No. 20-CV-07294 (SN), 2022 WL 464098, at *12 (S.D.N.Y. Feb. 15, 2022).

There is no question that Plaintiff suffers from physical pain and limitation.  The ALJ did not dismiss this evidence and, instead, found her limited to a reduced range of sedentary work. (T at 16).

"[D]isability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). "Otherwise, eligibility for disability benefits would take on new meaning." *Id.*

Here, the ALJ offered specific support for this aspect of her decision, including a reasonable reading of the treatment notes, imaging studies, and clinical assessments, an appropriate reconciliation of the medical opinion evidence, and proper consideration of the activities of daily living.  This is sufficient to sustain the disability determination under the deferential standard of review applicable here.

### 2.  Mental Functioning

Dr. Ross Mendlinger performed two consultative psychiatric evaluations.  In April of 2021, Dr. Mendlinger diagnosed unspecified depressive disorder and panic disorder. (T at 513).  He opined that Plaintiff had no limitation in her ability to understand, remember, and apply simple

14

or complex instructions; no limitation in using reason and judgment to make work-related decisions; mild impairment in social interaction; no limitation in sustaining concentration or performing at pace; marked impairment with respect to sustaining an ordinary routine and regular attendance at work; and marked limitation with respect to regulating emotions, controlling behavior, and maintaining well-being. (T at 512-13).

In August of 2021, Dr. Mendlinger made the same diagnoses and identified essentially the same functional limitations, except that he now assessed only moderate impairment with respect to sustaining an ordinary routine and regular attendance at work; and moderate limitation regulating emotions, controlling behavior, and maintaining well-being. (T at 580).

Maria Laguna Perez, LCSW completed a functional assessment in March of 2021.  She noted diagnoses of PTSD and ADHD. (T at 499).  Ms. Perez reported treating Plaintiff weekly since February of 2018 and described Plaintiff as experiencing hypervigilance, difficulty regulating emotions, depression, and impulsivity. (T at 499).  She characterized Plaintiff's prognosis as "limited given intermittent periods of decompensation (poor impulse control, severe depression)." (T at 499).

Ms. Perez assessed limitation in Plaintiff's short-and long-term memory, impaired concentration and persistence, limitation as to social

15

interaction, and difficulty adapting to changes in the work setting. (T at 500-501).

David Rossi, PMHNP-BC, completed a functional assessment in August of 2022. He reported treating Plaintiff monthly since June of 2022. (T at 1149). He diagnosed major depressive disorder (recurrent, severe), PTSD, ADHD, and panic disorder. (T at 1149). Mr. Rossi opined that Plaintiff was "unable to function properly in a workplace setting due to panic disorder, attention deficit disorder, and comorbid medical diagnoses." (T at 1151).

Mr. Rossi assessed moderate impairment with respect to Plaintiff's social functioning but reported that Plaintiff could not function properly in the workplace due to marked limitation in her ability to respond appropriately to usual work situations and changes in a work setting. (T at 1151, 1154).

Dr. Kamin, a non-examining State Agency review physician, found insufficient evidence to rate the severity of Plaintiff's mental impairments prior to the date last insured, but concluded that she had mild limitation in adapting or managing herself, moderate limitation in interacting with others, moderate impairment understanding, remembering, or applying

information, and moderate limitation as to concentrating, persisting, or maintaining pace as of April of 2021. (T at 79-86, 95-96).

Dr. Fassler, another State Agency review physician, likewise found insufficient evidence to rate the severity of Plaintiff's mental impairments prior to the date last insured. (T at 134). Dr. Fassler opined that Plaintiff had moderate impairment in all domains of mental functioning as of September of 2021. (T at 112-20).

The ALJ recognized Plaintiff's major depressive disorder, PTSD, panic disorder, and anxiety disorder as severe impairments (T at 13), but concluded that she could meet the mental demands of a reduced range of work, involving only simple instructions; requiring no more than occasional interaction with supervisors, coworkers, and the public; and allowing her to be off-task up to 9% of the day in addition to normal breaks. (T at 16).

In reaching this decision, the ALJ accepted Dr. Fassler's assessment of moderate limitation in Plaintiff's mental functioning. (T at 21). The ALJ found Dr. Medlinger's second, less restrictive, opinion more persuasive than the consultative examiner's first assessment. (T at 21). The ALJ considered Ms. Perez's opinion vague and "not entirely persuasive." (T at 21). The ALJ noted that Mr. Rossi had only been treating Plaintiff for a

17

brief period and found his assessment of marked impairment inconsistent with, and not supported by, the record. (T at 21-22).

The Court finds that the ALJ's analysis of the evidence concerning Plaintiff's ability to meet the mental demands of competitive, remunerative work cannot be sustained. Here's why.

First, the ALJ gave insufficient consideration to the fact that Ms. Perez was a long-term treating provider, with the opportunity to interact with and observe Plaintiff on a regular basis for more than three years.

The Second Circuit has long recognized the particular importance of treating source opinions when reviewing claims involving mental impairments. *See Flynn v. Comm'r of SSA*, 729 F. App'x 119, 122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations.").

Although the treating physician rule is no longer in effect, this important principle persists, as the opportunity to observe and treat the claimant constitutes important "support" for a medical opinion under the

18

new standard. *See, e.g., Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8-9 (N.D.N.Y. Feb. 22, 2021).

"As the amended regulations note, '[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v)); *see also* A*costa Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Cuevas v. Comm'r of Soc. Sec.*, No. 20CV0502KMWKHP, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022), at *25-26 (S.D.N.Y. Jan. 29, 2021)("A survey of … cases … show[s] that while the treating physician's rule was modified, the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar.")(collecting cases).

"Even though ALJs are no longer directed to afford controlling weight to treating source opinions—no matter how well supported and consistent with the record they may be—the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Shawn H. v. Comm'r of Soc. Sec.*, No.

19

2:19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)(quoting

*Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)).

Moreover, the ALJ erred by discounting Ms. Perez's opinion as "vague." Given Ms. Perez's unique status as a long-term mental health provider and given the ALJ's decision to reject multiple treating and examining opinions, the ALJ erred by determining Plaintiff's mental RFC without seeking clarification to the extent she found Ms. Perez's assessment vague and/or inconsistent with the treatment record. *See Piscope v. Colvin*, 201 F. Supp. 3d 456, 464 (S.D.N.Y. 2016)("Given the conflicts in the medical evidence, and in light of the ALJ's decision to grant none of the medical opinions full weight, the record calls for enhancement through inquiries to the treating physicians or consultants that might shed light on the import of their opinions and the conflicts the ALJ identified."); *see also Carrasquillo v. Comm'r of Soc. Sec.*, No. 23-CV-02323 (NRM), 2025 WL 3251043, at *12 (E.D.N.Y. Nov. 21, 2025)(duty to develop the record includes "an affirmative duty to recontact a medical expert if an ALJ makes an initial determination that a medical expert's opinions are vague or appear to be inconsistent with their examination notes")

20

Second, the ALJ erred by discounting the opinions from Ms. Perez and Mr. Rossi and the first assessment from Dr. Medlinger as inconsistent with the record without accounting for their consistency with each other.

This can be seen most vividly with the ALJ's balancing of the two opinions provided by Dr. Medlinger.  The ALJ explained her decision to give more weight to Dr. Medlinger's second, less restrictive opinion because "nothing in the objective record to support his earlier opinion of marked limits …." (T at 21).

This ignores the fact that the assessments from Ms. Perez and Mr. Rossi, which are part of the record, fully support a finding of marked impairment in mental functioning and, in particular, are consistent with the conclusion that Plaintiff had marked limitation in her ability to adapt to changes, regulate emotions, and sustain a schedule.

The ALJ erred by failing to consider this material consistency between the treating and examining providers' assessments. *See Shawn H.*, 2020 WL 3969879, at *7 ("Moreover, the ALJ should have considered that the opinions of Stephens and Dr. Lussier are consistent with each other."); *Malia Ann B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2838054, at *7 (N.D.N.Y. Feb. 23, 2023), *report and recommendation adopted*, No. 5:21-CV-1362-AMN-CFH, 2023 WL

21

2623865 (N.D.N.Y. Mar. 24, 2023)(collecting cases holding that "the ALJ is obligated to discuss the consistency of a medical opinion with the other evidence in the record, which necessarily includes other medical opinions").

Third, the ALJ overrated the relevance of Plaintiff's ability to maintain appropriate attendance and affect during periodic (weekly or monthly) encounters with supportive mental health professionals.

The Commissioner's regulations recognize that a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [her] ability to complete tasks in the context of regular employment during a normal workday or work week."  20 C.F.R. Subpt. P, App. 1 § 12.00 (C) (6) (b); *see also Primo v. Berryhill*, No. 17 CIV. 6875 (LTS) (HBP), 2019 WL 2453343, at *13 (S.D.N.Y. Feb. 19, 2019)*, report and recommendation adopted sub nom. Primo v. Comm'r of Soc. Sec.,* No. 17 CV 6875-LTS-SLC, 2021 WL 1172248 (S.D.N.Y. Mar. 29, 2021)(noting that ALJs must recognize that "the effects of a mental health issue may be different in a work setting than in a non-work setting"); *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 Fed. Appx. 119, 121 (2d Cir. 2018) (decision to discount opinion based on treatment notes indicating claimant

22

was "well-groomed and with calm affect" was "an assessment ... beyond the scope of the ALJ's authority").

There is no doubt that Plaintiff's ability to meet the mental demands of basic work activity is significantly limited – the ALJ found her restricted to a reduced range of unskilled work. (T at 16).

Thus, the question is not *whether* Plaintiff's mental functioning is limited, but to what *extent* Plaintiff's symptoms would be exacerbated if she was exposed to the demands of competitive, remunerative work on a consistent basis. The judgment of two treating providers and initial assessment of the consultative examiner was that Plaintiff would decompensate and be unable to meet the mental demands of basic work activity. (T at 500-501, 512-13, 1151, 1154).

The ALJ erred by discounting this shared assessment based on her lay reading of the record. *See Stacey v. Comm'r of SSA*, 799 F. Appx. 7, 11 (2d Cir. 2020)("It would be improper to rely on these mental status evaluations to conclude that Stacey is capable of prolonged concentration while simultaneously ignoring the contrary conclusion of the very physicians who made the evaluations.").

Moreover, while the treatment notes document Plaintiff as often presenting with a cooperative attitude and appropriate engagement at

23

medical appointments, they likewise describe a person living a relatively sheltered lifestyle, suffering from severe psychiatric symptoms, and experiencing variable levels of functioning. (T at 565, 673, 707, 755, 937, 1266, 1269, 1281). *See Stacey*, 799 F. Appx. at 10 (cautioning "ALJs against scouring medical notes to draw their own conclusions based on isolated descriptions"); *Gough v. Saul*, 799 F. Appx. 12, 14 (2d Cir. 2020)("We fear that the ALJ cherry-picked evidence from the record to support his conclusion that Gough could work full time even though the record as a whole suggested greater dysfunction."); *Kohler v. Astrue*, 546 F.3d 260, 268 (2d Cir. 2008)(finding that ALJ erred by, *inter alia*, "consistently interpret[ing] reports that [claimant's] condition has been 'stable' to mean that [her] condition has been good, when the term could mean only that her condition has not changed, and she could be stable at a low functional level").

Lastly, there is an *ad hoc* quality to the ALJ's mental RFC assessment.  The ALJ limited Plaintiff to work where she would be permitted to be off task up to 9% of the day. (T at 16).  No medical professional assessed this level of off-task behavior.  Having recognized record support for significant impairment in Plaintiff's ability to sustain concentration in a work environment, the ALJ was obliged to do something

more than rely on her lay assessment to quantify the precise percentage of impairment. *See Amarante v. Commissioner of Social Security*, No. 16-CV-0717, 2017 WL 4326014 at \*10 (S.D.N.Y. Sept. 8, 2017) (remanding where ALJ "improperly assume[d] the mantle of a medical expert"); *see also Bienvenido J.P. v. Commissioner of Social Security*, No. 20-CV-9270, 2022 WL 901612, at \*5 n. 3 (S.D.N.Y. March 28, 2022) ("The ALJ remains a layperson and should not 'assume the mantle of a medical expert….'"); *Balotti v. Comm'r of Soc. Sec.*, No. 20-CV-8944 (RWL), 2022 WL 1963657, at \*6 (S.D.N.Y. June 6, 2022).

## B. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at \*28 (S.D.N.Y. Nov. 6, 2014).

For the reasons discussed above, the Court finds that the ALJ's mental RFC assessment is not supported by substantial evidence and must be revisited on remand.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 27) is GRANTED, and this case is REMANDED for further administrative proceedings consistent with this Decision and Order. The Clerk is directed to enter final judgment in favor of the Plaintiff and then close the file.

Dated: May 2, 2026                    _s / Gary R. Jones_
                                      GARY R. JONES
                                      United States Magistrate Judge

26